01
02
03
04
05
06
07
08
09
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

NATHAN LORING,                         )     Case No. C05-1599-RAJ-JPD
                                       )
              Petitioner,              )
                                       )
       v.                              )
                                       )     REPORT AND RECOMMENDATION
ALICE PAYNE,                           )
                                       )
              Respondent.              )
_____ )

## I.  INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Nathan Loring, an inmate at the McNeil Island Corrections Center in
Steilacoom, Washington, proceeds *pro se* and *in forma pauperis* in this petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254.  Dkt. No. 4.  Respondent has filed an answer
opposing the petition, Dkt. No. 8, to which petitioner has replied.  Dkt. No. 12.  Proceedings
in this case were stayed and the petition was held in abeyance for well over a year, so that
petitioner could make every effort to properly exhaust his claims in state court.  *See* Dkt. Nos.
17, 20, 24, 25, 27.  After careful consideration of the petition, briefs, the governing law and
balance of the record, the Court recommends that petitioner's § 2254 petition be DENIED and
this case DISMISSED with prejudice.

REPORT AND RECOMMENDATION
PAGE – 1

01          II.   FACTS AND PROCEDURAL HISTORY

02          During the spring and summer of 1996, petitioner lived with his brother's family and

03   their three year-old daughter, "A.J." Dkt. No. 11, Ex. 2 at 2.[1]  Several years later, when she

04   was eight, A.J. told her mother that petitioner had sexually abused her when he had lived with

05   them in 1996.  *Id*.  Over the course of the next several weeks, A.J revealed details of her

06   experience to a nurse at Harborview Medical Center and to Ashley Wilske, a child interviewer

07   with the King County Prosecutor's Office.  *Id*.  During an interview with Wilske, A.J.'s minor

08   sister, "N.L.," informed investigators that petitioner had sexually abused her since she was

09   seven.  *Id*. at 3.

10          Petitioner was charged with one count of first degree child rape and one count of third

11   degree child rape.  *Id*.  Prior to trial, the trial court conducted a competency hearing to

12   determine whether A.J. was competent to testify and whether her out-of-court statements to

13   her mother, Harborview medical personnel, and Ms. Wilske could be admitted into evidence.

14   *Id*.  Following testimony by A.J., her mother, Ms. Wilske, and an expert in child memory and

15   psychology, the trial court determined that A.J. was competent to testify and admitted her out-

16   of-court statements.  *Id*. at 2-5.  On February 11, 2003, petitioner was found guilty by a jury

17   and convicted of  first degree child rape and one count of third degree child rape.  Dkt. No. 11,

18   Ex. 1.  He was sentenced to 125 months imprisonment.  *Id*.

19          A.   Direct Review

20          Proceeding through counsel, petitioner appealed his conviction to Division One of the

21   Washington Court of Appeals ("Court of Appeals").  Dkt. No. 11, Ex. 3.[2]  After the State

22   filed its responsive brief, petitioner filed a supplemental *pro se* brief that raised two additional

23   assignments of error, Dkt. No. 11, Exs. 4-5, and shortly thereafter, petitioner's

24

25          [1]  For a more detailed description of the facts in this case, see *State v. Loring*, 122
26   Wash.App. 1039, 2004 WL 1658636, *1-2 (2004) (unpublished opinion).

          [2]  For a more detailed recitation of the procedural history in this case, see Dkt. No. 13.

REPORT AND RECOMMENDATION
PAGE – 2

01  attorney filed a reply brief that raised a new issue. *Id.* Ex. 6.  Relying upon *Crawford v.*
02  *Washington*, 541 U.S. 36 (2004), counsel argued that the trial court had erroneously admitted
03  A.J.'s out-of-court statements without allowing petitioner an opportunity for cross-
04  examination. *Id.* Ex. 6 at 1-5.  The State moved to strike the *Crawford* argument, because it
05  had been raised for the first time in the reply brief. *Id.* Ex. 7.  Petitioner's counsel opposed the
06  motion, but the Court of Appeals granted the motion to strike and affirmed petitioner's
07  conviction in an unpublished decision. *Id.* Exs. 2, 8, 9;  *State v. Loring*, 122 Wash.App. 1039,
08  2004 WL 1658636, *7 (2004) (unpublished opinion), *review denied*, 153 Wash.2d 1028, 110
09  P.3d 213 (2005) (unpublished opinion).  Petitioner subsequently filed a petition for direct
10  review in the Washington Supreme Court ("Supreme Court"), which the Supreme Court
11  denied without substantive comment on March 29, 2005. *Loring*, 153 Wash.2d 1028, 110
12  P.3d 213.  On May 6, 2005, the Court of Appeals issued its mandate.  Dkt. No. 11, Ex. 12.

13     B. <u>Collateral Review</u>

14    Initially, petitioner did not file a collateral attack on his sentence.  Instead, he filed a 28
15  U.S.C § 2254 petition for writ of habeas corpus in this Court.  Dkt. No. 4.  On March 24,
16  2006, the Court determined that petitioner had presented a mixed petition and ordered that he
17  select the method of proceeding in this case.  *See* Dkt. No. 13 (finding first and fourth claims
18  for relief unexhausted).  Upon the election of the petitioner, and good cause having been
19  shown, the Court directed that petitioner's case be stayed and his § 2254 petition held in
20  abeyance, enabling petitioner to make every effort to properly exhaust his claims in state court.
21  Dkt. No. 17.  After issuing multiple orders continuing the stay in this case, Dkt. Nos. 18, 20,
22  24, the Court was notified that petitioner had made every effort to exhaust his claims in state
23  court.  Dkt. No. 25.  According, the stay was lifted and the parties were allowed to file
24  supplemental briefs together with the additional state court record.  Dkt. No. 27.

25    These pleadings indicate that on May 15, 2006, petitioner filed a personal restraint
26  petition ("PRP") in the Washington Supreme Court, arguing that prosecutorial misconduct and

REPORT AND RECOMMENDATION
PAGE – 3

01 | the trial court's competency determination regarding A.J. denied petitioner his right to a fair

02 | trial under the Sixth Amendment.  Dkt. No. 30, Ex. 14.  The Supreme Court transferred

03 | petitioner's PRP to the Court of Appeals, Dkt. No. 17, where it was eventually dismissed as

04 | procedurally barred.  Dkt. No. 30, Ex. 18 (citing *In re Lord*, 123 Wash.2d 296, 303, 868 P.2d

05 | 835 (1994)).  Petitioner then filed a motion for discretionary review in the Washington

06 | Supreme Court, raising the same claims.  *Id.* Ex. 19.  Review was denied by the Supreme

07 | Court Commissioner on October 17, 2006.  *Id.* Ex. 6.  The Supreme Court determined that

08 | petitioner failed to demonstrate that the interests of justice required re-examination of the

09 | issues he raised on direct review, and alternatively, that his PRP was time-barred under R.C.W.

10 | § 10.73.090(1).  Petitioner's motion to modify the Commissioner's ruling was denied by the

11 | Supreme Court on January 3, 2007, and a Certificate of Finality was issued by the Court of

12 | Appeals three weeks later.  Dkt. No. 30, Exs. 22, 23.

13 |      The parties then filed supplemental briefing relating to petitioner's habeas petition as

14 | newly exhausted.  *See* Dkt. Nos. 28-33.  Petitioner's § 2254 petition, the parties' numerous

15 | pleadings, and the complete record in this case are now before the Court.

16 |

17 |                          III.   CLAIMS FOR RELIEF

       The petition, as supplemented, raises four claims for relief:

18 |
19 |     1.    The trial court erred by finding the accuser was competent to testify, in
             violation of petitioner's Sixth Amendment right to a fair trial;

20 |     2.    Petitioner's Sixth Amendment right to confrontation was violated when the trial
             court admitted the accuser's hearsay statements;
21 |
22 |     3.    Petitioner's Sixth Amendment right to effective assistance of counsel was
             violated when defense counsel failed to object to certain prejudicial testimony;
             and
23 |
24 |     4.    Prosecutorial misconduct denied petitioner of his Sixth Amendment right to a
             fair trial.

25 | Dkt. No. 1 at 3, 6, 9, 11; Dkt. No. 31 at 2-9.

26 |

REPORT AND RECOMMENDATION
PAGE – 4

01   Respondent insists that the petitioner's first and fourth claims are procedurally barred,

02   and argues that his second and third claims should be denied on the merits.  Dkt. No. 8 at 17-

03   24; Dkt. No. 28 at 7.

04                              IV.   DISCUSSION

05       A.   Petitioner's First and Fourth Claims for Relief Are Procedurally Barred

06       A petitioner is deemed to have "procedurally defaulted" his claim for relief if he fails to

07   comply with a state procedural rule, or fails to raise the claim at the state level.  *Edwards v.*

08   *Carpenter*, 529 U.S. 446, 451 (2000).   Procedural defaults in state court may result in a

09   procedural bar in federal habeas actions.  The United States Supreme Court has recognized

10   that when a petitioner has defaulted on his claims in state court, principles of federalism,

11   comity, and the orderly administration of justice require that federal courts forgo the exercise

12   of their habeas corpus power, unless the petitioner can demonstrate (1) cause for the default

13   and prejudice attributable thereto, or (2) that failure to consider the claim will result in a

14   "fundamental miscarriage of justice."  *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Coleman*

15   *v. Thompson*, 501 U.S. 722, 729-32 (1991); *see also Franklin v. Johnson*, 290 F.3d 1223,

16   1230-31 (9th Cir. 2002).

17       The resulting bar can be express or implied.  A state court invokes an express

18   procedural bar by explicitly referring to a state rule or procedure to deny a petitioner's claim,

19   or by referring to a case or phrase that invokes the applicable rule.  *See, e.g.*, *Zichko v. Idaho*,

20   247 F.3d 1015, 1021 (9th Cir. 2001) (rule); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir.

21   2000) (case); *Bennett v. Mueller*, 322 F.3d 573, 580 (9th Cir.) (phrase), *cert. denied sub nom.*

22   *Blanks v. Bennett*, 540 U.S. 938 (2003).  An implied procedural bar exists when a petitioner

23   has failed to present his claims fairly to the highest state court and would now be barred from

24   returning to do so by an adequate, independent, and mandatory state procedural rule.  *Moreno*

25   *v. Gonzalez*, 116 F.3d 409, 411 (9th Cir. 1997).

26

REPORT AND RECOMMENDATION
PAGE – 5

01    In the present case, the Washington Supreme Court expressly found that R.C.W. §

02  10.73.090 barred petitioner's first and fourth claims collaterally attacking his 2003 conviction.

03  *See* Dkt. No. 30, Ex. 20 at 2.   This provision bars collateral challenges of convictions more

04  than one year after such convictions become "final," which is triggered by the date of mandate

05  for direct appeal.  R.C.W. § 10.73.090(1), (3)(b).  Here, that mandate was issued by the Court

06  of Appeals on May 6, 2005.  Dkt. No. 11, Ex. 12.  Because petitioner did not file his PRP

07  raising his first and fourth claims by this date, such claims are procedurally barred in this

08  federal habeas action.[3]   Resolution of this matter, then, turns on whether petitioner has shown

09  that cause and prejudice exist, or a fundamental miscarriage of justice will result if these claims

10  are not considered.  *Harris*, 489 U.S. at 261-62.  The Court finds that neither exception

11  applies.

12    B.    Petitioner Has Not Shown that Cause and Prejudice Exists, or that a
        Fundamental Miscarriage of Justice Will Result if His First and Fourth
13        Claims Are Not Considered

14    Federal courts generally honor state procedural bars unless it would result in a

15  "fundamental miscarriage of justice," or petitioner demonstrates cause and prejudice, absent

16  waiver by the respondent.  *Coleman*, 501 U.S. at 750.  "Cause" is a legitimate excuse for the

17  default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Id.*

18    To satisfy the "cause" prong of the cause and prejudice exception, a petitioner must

19  show that "some objective factor external to the defense" prevented him from complying with

20  the state's procedural rule.  *McCleskey v. Zant*, 499 U.S. 467, 493 (1991).  Objective factors

21  establishing "cause" may include interference by government officials making compliance with

22  the procedural rule impracticable, or "a showing that the factual or legal basis" for the claims

23  "was not reasonably available" at the time of the default.  *Id.* at 493-94 (internal quotations

24

25    [3] Furthermore, it is likely that petitioner could not return to state court to seek additional
    relief for any of his claims for any independent reason, as any further motion filed by petitioner in
26  state court would likely be denied as repetitive, see R.C.W. § 10.73.040 and R.A.P. 16.4(d),
    making a return to state court futile.  *Phillips v. Woodford*, 267 F.3d 966, 973-74 (9th Cir. 2001).

REPORT AND RECOMMENDATION
PAGE – 6

01  omitted).  Constitutionally ineffective assistance of counsel may also constitute cause, but any

02  attorney error short of that—such as attorney ignorance, inadvertence, or tactical

03  decision—will not excuse the default.  *Id.* at 494.   Furthermore, the mere fact that a petitioner

04  is *pro se* or lacks knowledge of the law is insufficient to satisfy the cause prong.  *See, e.g.*,

05  *Hughes v. Idaho State Bd. of Corr.*, 800 F.2d 905, 909 (9th Cir. 1986) (*pro se* petitioner must

06  be held accountable for failure to timely and adequately pursue his remedy to the state supreme

07  court).

08        Here, petitioner has failed to establish "cause" for his procedural default or even point

09  to a single external impediment preventing him from timely presenting his first and fourth

10  claims to the appellate courts of Washington.  *See McCleskey*, 499 U.S. at 493.  Indeed, the

11  fact that petitioner was able to present and properly exhaust two independent, yet similar

12  claims belies the existence of such an obstacle.   Furthermore, the fact that one of petitioner's

13  timely claims fall under the ineffective assistance of counsel category does not, without more,

14  establish the requisite cause in this matter, for the substantive reasons stated below.  *See infra*

15  § IV.D.1.  Petitioner has made no showing that some objective factor external to his defense

16  prevented him from complying with R.C.W. § 10.73.090.  Because petitioner "cannot establish

17  any reason, external to him, to excuse his procedural default," this Court need not address the

18  issue of actual prejudice.  *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998); *see*

19  *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991) (finding of lack of cause eliminates

20  courts need to discuss whether petitioner was prejudiced by the alleged constitutional

21  violation).   Finally, because petitioner has not demonstrated the likelihood of his actual

22  innocence, this case does not present the extraordinary instance where a habeas petition should

23  be granted notwithstanding the absence of a showing of cause.  *Murray*, 477 U.S. at 495-96.

24        C.      Standard of Review

25        The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No.

26  104-132, 110 Stat. 1214 (1996), governs habeas petitions filed by prisoners who were

REPORT AND RECOMMENDATION
PAGE – 7

01  convicted in state courts.  28 U.S.C. § 2254.  AEDPA "demands that state-court decisions be

02  given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  A habeas

03  petition may be granted with respect to any claim adjudicated on the merits in state court only

04  if the state court's adjudication is "*contrary to*, or involved an *unreasonable application of*,

05  clearly established Federal law, as determined by the Supreme Court of the United States."  28

06  U.S.C. § 2254(d) (emphasis added).

07          Under the "contrary to" clause of AEDPA, a federal habeas court may grant the writ

08  only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on

09  a question of law, or if the state court decides a case differently than the Supreme Court has on

10  a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 389-90

11  (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ

12  only if the state court identifies the correct governing legal principle from the Supreme Court's

13  decisions but unreasonably applies that principle to the facts of the petitioner's case.  *Id.*   In

14  addition, a habeas corpus petition may be granted if the state court decision was based on an

15  unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. §

16  2254(d).

17          In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court examined the meaning

18  of the phrase "unreasonable application of law," ultimately correcting an earlier interpretation

19  by the Ninth Circuit which had equated the term with the phrase "clear error."  The Court

20  explained:

21          These two standards . . . are not the same.  *The gloss of clear error fails
        to give proper deference to state courts by conflating error (even clear error) with
22      unreasonableness.   It is not enough that a federal habeas court, in its
        "independent review of the legal question" is left with a "firm conviction" that
23      the state court was "erroneous."* . . .  [A] federal habeas court may not issue the
        writ simply because that court concludes in its independent judgment that the
24      relevant state-court decision applied clearly established federal law erroneously or
        incorrectly.  Rather, that application must be objectively unreasonable.

25  *Lockyer*, 538 U.S. at 68-69 (citations omitted, emphasis added).

26

REPORT AND RECOMMENDATION
PAGE – 8

01        In sum, the Supreme Court has directed lower federal courts reviewing habeas petitions

02   to be extremely deferential to state court decisions.  A state court's decision may be

03   overturned only if the application is "objectively unreasonable."  *Id.*  Whether a state court

04   adjudication was reasonable depends upon the specificity of the rule:  "the more general the

05   rule, the more leeway courts have."  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

06        D.   The State Court Decisions Rejecting Petitioner's Sixth Amendment
             Arguments and Upholding his Conviction Were Neither Contrary to Nor
07           an Unreasonable Application of Clearly Established Supreme Court Law

08             1.   *Sixth Amendment Right to Effective Assistance of Counsel*

09        Claims of ineffectiveness of appellate counsel are reviewed according to the standard

10   announced in *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).  In order to prevail on

11   such a claim, the petitioner must establish two elements.  First, he must establish that counsel's

12   performance was deficient, *i.e.*, that it fell below an "objective standard of reasonableness"

13   under "prevailing professional norms."  *Strickland*, 466 U.S. at 687-88.  Second, the petitioner

14   must establish that he was prejudiced by counsel's deficient performance, *i.e.*, that "there is a

15   reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

16   would have been different."  *Id.* at 694.

17        Considering the first prong of the *Strickland* test, the petitioner must rebut the "strong

18   presumption that counsel's conduct falls within the wide range of reasonable professional

19   assistance."  *Strickland*, 466 U.S. at 689.  The test is not whether another lawyer, with the

20   benefit of hindsight, would have acted differently, but rather, whether "counsel made errors so

21   serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

22   Amendment."  *Id.* at 687, 689; *see also Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000)

23   ("Under *Strickland*, counsel's representation must be only objectively reasonable, not flawless

24   or to the highest degree of skill.").

25        To meet the second *Strickland* requirement of prejudice, the petitioner must show that

26   counsel's deficient performance prejudiced the defense.  *Id.* at 687.  It is not enough that

REPORT AND RECOMMENDATION
PAGE – 9

01  counsel's errors had "some conceivable effect on the outcome." *Id.* at 693. Rather, the

02  petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors,

03  the result of the proceeding would have been different." *Id.* at 691. "A reasonable probability

04  is a probability sufficient to undermine confidence in the outcome" of the case. *Id.* at 694.

05  Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.

06  *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

07      Here, petitioner claims that his counsel rendered ineffective assistance when he failed to

08  object to (1) testimony by A.J.'s father that A.J. exhibited behavior typical of a girl who had

09  been molested; (2) testimony by N.L. that she "knew [A.J.] was not lying"; (3) and testimony

10  by N.L.'s friend, James Glaefke, that he never doubted N.L. and told her parents that they, too,

11  should believe N.L. because she "has no reason to make it up." Dkt. No. 10 at 14-16 (petition

12  for review); Dkt. No. 31 at 5 (citing Dkt. No. 13, Ex. 6 at 236-37, 286, 320, 322). The Court

13  of Appeals rejected these arguments, concluding that counsel's decision not to object was, in

14  each instance, a tactical decision it was unwilling to second guess. *See Loring*, 122 Wash.App.

15  1039, 2004 WL 1658636 at *5-6.

16              a.    *Testimony of A.J.'s Father*

17      At trial, A.J.'s father, Michael Johnson, testified regarding his concern over his

18  daughter's behavior:

19          . . . . [B]ecause of the background in the family, I had seen molestation and
            what it had done to the children, and girls, and [A.J.] was very—very—she
20          reached out to boys, and always hung all over them, and it really bothered me,
            because that was a sign to me of molestation, because I had seen many girls that
21          have been molested in the past, had done the same thing; they would hang onto
            boys and be real clingy. And that's what I was perceiving her doing, and it kind
22          of bothered me. It made me feel like there wasn't something right there.

23              Because I have an eight-year-old stepdaughter; she doesn't do it. I have
            a 10-year-old, my brother-in-law's daughter; she doesn't do it. All the girls that
24          I've been around, they weren't acting like this, all these little kids. But my
            daughter was doing this, and acting more sexual, I would say, more adult-like
25          with boys than what she should be. And it was generally older boys that she
            was doing this with, and that bothered me a lot.

26  Dkt. No. 11, Ex. 6 at 236-37.

REPORT AND RECOMMENDATION
PAGE – 10

The Court of Appeals determined that counsel's decision not to object to this testimony was strategic in nature. *Loring*, 122 Wash.App. 1039, 2004 WL 1658636 at *5. The court noted that rather than object, petitioner's counsel attacked Mr. Johnson on this very issue during cross-examination, exposing his credibility. *Id.* Indeed, counsel's cross-examination opened with the following exchange:

Q:   Good afternoon, Mr. Johnson. You said that you were concerned about molestation with [A.J.]—

A:   Mm-hm (affirmative).

Q:   —well before this ever came out?

A:   Yes.

Q:   But you never talked to her about that?

A:   No.

Q:   Never inquired with her about it?

A:   No.

Q:   Never talked to anyone else about it?

A:   Nope.

Q:   Never did anything about it?

A:   I just talked to my wife about it. That's about it.

Q:   Okay. And?

A:   And it was not molestation, it was my worry. It was just odd, the way she acted.

Dkt. No. 11, Ex. 6 at 240.

The Court of Appeals's conclusion in this regard was neither contrary to, nor unreasonable application of, clearly established federal law as articulated by the United States Supreme Court. Petitioner's counsel undermined Mr. Johnson's testimony not by calling undue attention to it as it was made, but rather, by subsequently exposing the inconsistencies between his direct and cross-examination testimony (where he claimed, inconsistently,

REPORT AND RECOMMENDATION
PAGE – 11

01  that his worries both were and were not based on a fear of molestation), as well as between

02  Mr. Johnson's stated "concerns" and his actions (or lack thereof).  Petitioner's argument, at

03  best, attacks a tactical decision by his trial counsel that is accorded great deference on habeas

04  review and cannot, as a general matter, form the basis of an ineffective assistance of counsel

05  claim.  *Mancuso v. Olivarez*, 292 F.3d 939 (9th Cir. 2002); *see also Dows*, 211 F.3d at 487.

06                          b.      *Testimony of N.L. and James Glaefke*

07          At trial, N.L.'s testimony described, *inter alia*, how she learned about A.J.'s allegations

08  of abuse, including the fact that petitioner "started spitting on [her] private," explaining that

09          [a]fter a while, after we had been to the interview with [A.J.], and Detective
           Clark had told us exactly what [A.J.] said in the interview, I told Hallie [A.J.'s
10         mother] later in the week, I think that I knew [A.J.] wasn't lying, because that's
           what he did to me.

11          Q:      At that time, when Hallie called you, you didn't tell her then about the
12                  spitting?

13          A:      I don't know.  I don't think I went into detail.

14  Dkt. No. 11, Ex. 6 at 286.

15          The Court of Appeals viewed counsel's lack of objection here as tactical.  *Loring*, 122

16  Wash.App. 1039, 2004 WL 1658636 at *6 ("Had Loring's attorney objected to the unsolicited

17  remark, he surely would have drawn undue attention to the comment.  In the context of N.L.'s

18  testimony, failing to object can be characterized as strategic.").  Rather than highlight the

19  statements made by N.L., petitioner's counsel decided to attack her credibility.  On cross-

20  examination, petitioner's counsel was able to get N.L. to acknowledge that she had not

21  mentioned  the "spitting" incident to a single person until her interview with the prosecutor

22  shortly before trial.  *See* Dkt. No. 11, Ex. 6 at 307.

23          Petitioner also alleges that his trial counsel rendered ineffective assistance by not

24  objecting to similar vouching testimony by Mr. Glaefke, a family friend.  Dkt. No. 31 at 5-6.

25  While testifying about a time when N.L. had told him that petitioner had sexually abused her

26  "since she was eight," Dkt. No. 11, Ex. 6 at 317-19, Mr. Glaefke testified that he witnessed

REPORT AND RECOMMENDATION
PAGE – 12

01  N.L. instant messaging the petitioner in a visibly upset emotional state, after which the

02  following exchange took place:

03      [W]hen she closed [the computer] down . . . [N.L.] said "Now do you believe
        me?"  "Yes."  I told her I didn't doubt her before, but that's something you
04      don't want to believe anyway, but I had no reason not to believe her.

05  *Id.* Ex. 6 at 320.

06      "Review[ing] [the] remarks against the backdrop of the defense's theory that in this

07  dysfunctional family, no one should be believed," the Court of Appeals concluded that

08  petitioner's counsel's decision not object to Mr. Glaefke's testimony was "a legitimate trial

09  tactic." *Loring*, 122 Wash.App. 1039, 2004 WL 1658636 at *6; *see also* Dkt. No. 11, Ex. 6 at

10  325-27) (cross-examining Mr. Glaefke on the topic).  The court also noted that petitioner's

11  attorney "did an able job of representing [the petitioner] at trial." *Loring*, 122 Wash.App.

12  1039, 2004 WL 1658636 at *6.  Because the court concluded that counsel's performance was

13  not deficient, it did not proceed to the question of prejudice.  *Id.*

14      For many of the same reasons stated above, the Court of Appeals's conclusion

15  regarding the testimony of N.L. and Mr. Glaefke was neither contrary to, nor an unreasonable

16  application of, clearly established Supreme Court law.  As explained above, this Court must

17  give defense counsel wide latitude in making tactical decisions, such as when and how and how

18  often to object.  *Dows*, 211 F.3d at 487.  This is especially true where, as here, petitioner's

19  counsel thoroughly attacked the statements in question during cross-examination.  In sum, it

20  simply cannot be said that counsel "failed to exercise the skill, judgment, or diligence of a

21  reasonably competent attorney." *Jones v. Wood*, 114 F.3d 1002, 1010 (9th Cir. 1997).

22      Furthermore, assuming the opposite were true, a claim of ineffectiveness based upon

23  counsel's failure to object must demonstrate that the objections probably would have produced

24  a different result at trial.  *See Strickland*, 466 U.S. at 690.  Petitioner has failed to meet this

25  burden.  Given the overwhelming weight of the evidence against petitioner, it is highly

26  probable that the jury would have returned an identical verdict absent these witnesses' non-

REPORT AND RECOMMENDATION
PAGE – 13

01 responsive statements, which in no way constituted the core of the State's case. *See id.* at 694.

02 Petitioner's prejudice claim fails because he cannot establish a reasonable probability that, but

03 for his trial counsel's alleged unprofessional errors, the result of his trial would have been

04 different. *Strickland*, 466 U.S. at 694; *Rios*, 299 F.3d at 805.

05 In conclusion, petitioner's counsel's alleged missteps do not amount to errors of

06 constitutional magnitude. Assuming *arguendo* that the opposite were true, the Court would

07 find that counsel's deficient performance did not prejudice petitioner's defense under the

08 circumstances. *Strickland*, 466 U.S. at 691, 694.

09 2.   *Sixth Amendment Confrontation Clause*

10 The admissibility of evidence is generally a question of state law.   However, the Sixth

11 Amendment's Confrontation Clause confers rights that cannot be satisfied merely by meeting

12 the requirements of the rules of evidence.   The Confrontation Clause provides that "in all

13 criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses

14 against him." U.S. CONST. amend. VI.   The right of cross-examination is secured by this

15 clause. *Douglas v. Alabama*, 380 U.S. 415, 418 (1965).   In *Crawford v. Washington*, 541

16 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause bars "admission of

17 testimonial statements of a witness who did not appear at trial unless he was unavailable to

18 testify, and the defendant had . . . a prior opportunity for cross-examination." *Id.* at 54

19 (*quoted in Davis v. Washington*, 547 U.S. 813, 821 (2006)).

20 Petitioner's Sixth Amendment Confrontation Clause argument is very similar, if not

21 identical, to that made by the petitioner's appellate counsel on direct review. *See* Dkt. No. 11,

22 Exs. 6, 10. Specifically, petitioner contends that because A.J. should have been deemed

23 incompetent and thus "unavailable" to testify, and because she was never subject to cross-

24 examination, her out-of-court statements to her mother, medical personnel, and the child

25 investigator should have been excluded as violative of petitioner's Sixth Amendment

26 confrontation rights under *Crawford*.

REPORT AND RECOMMENDATION
PAGE – 14

01       These arguments must fail.  First, the Washington Court of Appeals concluded that A.J.

02 *was* competent, and thus available, to testify at trial.  *See Loring*, 122 Wash.App. 1039, 2004

03 WL 1658636 at *3.  Regardless of the fact that petitioner is procedurally barred from re-

04 asserting this argument, *see supra* § IV.A., the Court determines that the Court of Appeal's

05 decision denying petitioner's competency claim was neither contrary to, nor an unreasonable

06 application of clearly established federal law as announced by the United States Supreme

07 Court.  *Williams*, 529 U.S. at 389-90.

08       Second, A.J. *was* subject to cross-examination at trial.  Dkt. No. 13, Ex. 6 at 177-224.

09 The Confrontation Clause "is not violated where the declarant is in court and defendant can

10 cross-examine [her]."  *Padilla v. Terhune*, 309 F.3d 614, 621 (9th Cir. 2002) (citing *United*

11 *States v. Valdez-Soto*, 31 F.3d 1467, 1470 (9th Cir. 1994) ("We are aware of no Supreme

12 Court case, or any other case, which holds that introduction of hearsay evidence can violate

13 the Confrontation Clause where the putative declarant is in court, and the defendants are able

14 to cross-examine him."); *see also United States v. Owens*, 484 U.S. 554, 559 (1988) ("[T]he

15 Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not

16 cross-examination that is effective in whatever way, and to whatever extent, the defense might

17 wish.'") (quoting *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987)).  *Crawford* is distinguishable

18 from the instant case because in *Crawford* the declarant was unavailable to testify and her

19 previous statements could therefore not be cross-examined.  Such was not the case here.

20 Accordingly, petitioner's Confrontation Clause argument must fail.  *See, e.g.*, *Owens*, 484 U.S.

21 at 559 (1988); *California v. Green*, 399 U.S. 149, 161 (1970).

22       D.    An Evidentiary Hearing Is Not Required

23       Generally, an evidentiary hearing is appropriate in a habeas corpus proceeding when the

24 petitioner's allegations, if proven, would entitle him to relief.  *Totten v. Merkle*, 137 F.3d 1172,

25 1176 (9th Cir. 1998).  Such a hearing is not required, however, when the Court is able to

26 resolve the petition on the existing state court record.  *Id.*  In this case, the record is sufficient

REPORT AND RECOMMENDATION
PAGE – 15

01 | for the Court to resolve the petition without a hearing.  Accordingly, an evidentiary hearing is

02 | not required.

03 | V.   CONCLUSION

04 | For the foregoing reasons, the Court recommends that petitioner's § 2254 habeas

05 | corpus petition be DENIED and this case DISMISSED with prejudice.  Consequently, the

06 | Court DENIES petitioner's motion for court-appointed counsel (Dkt. No. 33) filed on January

07 | 11, 2008.  A proposed order accompanies this Report and Recommendation.

08 | DATED this 17th day of March, 2008.

09 |

10 | *James P. Donohue*

11 | JAMES P. DONOHUE
United States Magistrate Judge

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

REPORT AND RECOMMENDATION
PAGE – 16